U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
Caitlin D. Brown, Trial Attorney
(929) 506-5277

Prime Healthcare Services – Saint Clare's, LLC
25 Pocono Road
Denville, NJ 07834
973-625-6000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————

U.S. EQUAL EMPLOYMENT                   )
OPPORTUNITY COMMISSION,                 )
                                        )
            Plaintiff,                  )        Civil Action No. 2:21-cv-2055
                                        )
     v.                                 )        **COMPLAINT AND**
                                        )        **JURY DEMAND**
PRIME HEALTHCARE SERVICES –             )
SAINT CLARE'S, LLC D/B/A SAINT          )
CLARE'S HEALTH,                         )
                                        )
            Defendant.                  )

———————————————————————

## NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.,* as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Taylor McKay ("McKay"). The United States Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant Prime Healthcare Services – Saint Clare's, LLC d/b/a Saint Clare's Health ("St. Clare's" or "Defendant") unlawfully withdrew its offer of

1

employment to McKay because of her disability and failed to provide her with a reasonable

accommodation, in violation of the ADA.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA,

as amended, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3)

of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-

5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The practices alleged to be unlawful were committed within the jurisdiction of

the United States District Court for the District of New Jersey.

PARTIES

3.      Plaintiff, the United States Equal Employment Opportunity Commission, is the

agency of the United States of America charged with the administration, interpretation, and

enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section

107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1)

and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.      At all relevant times, St. Clare's has continuously been a Delaware limited

liability corporation doing business in the State of New Jersey, and employing at least fifteen

(15) employees.

5.      At all relevant times, St. Clare's has continuously been an employer engaged in

an industry affecting commerce under Sections 101(2) of the ADA, 42 U.S.C. § 12111(2), and

Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections

701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) & (h).

6.      At all relevant times, St. Clare's has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.      More than 30 days prior to the institution of this lawsuit, Taylor McKay filed a Charge of Discrimination with the EEOC alleging violations of the ADA by St. Clare's.

8.      On September 1, 2020, after an investigation, the EEOC issued St. Clare's a Letter of Determination finding reasonable cause to believe that St. Clare's violated the ADA and inviting St. Clare's to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9.      The Commission engaged in communications with St. Clare's to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10.     The Commission was unable to secure from St. Clare's a conciliation agreement acceptable to the Commission.

11.     On November 2, 2020, the Commission issued St. Clare's a Notice of Failure of Conciliation.

12.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13.     St. Clare's has engaged in unlawful employment practices in violation of Section 102(a) of Title I of the ADA, 42 U.S.C. §§ 12112(a), by discriminating against McKay by withdrawing her offer of employment because of her disability.

    a.      St. Clare's is a provider of medical services in New Jersey.  It operates two hospitals, as well as a behavioral health center, imaging center, and a primary care physician practice.

b.   On September 3, 2019, St. Clare's offered Taylor McKay the position of Per Diem EMS Dispatcher, which McKay accepted.

c.   McKay was a qualified individual with respect to this position, under 42 U.S.C. § 12111(8).

d.   At the time McKay accepted the position, St. Clare's was aware that McKay was about six months pregnant and due to give birth in December 2019.

e.   Michelle Flynn, St. Clare's Human Resources Generalist, told McKay that she would be permitted to take a multi-week unpaid leave of absence upon the birth of her child.

f.   Before McKay could start work, she had to pass a pre-employment background check, drug test, reference check, and health screening.

g.   Her pre-employment drug screening appointment was scheduled for September 6, 2019, and her medical exam was scheduled for September 13, 2019.

h.   McKay attended the appointments on September 6 and September 13, 2019.

i.   McKay's employment with St. Clare's would start with an orientation.

j.   McKay's orientation was originally scheduled to begin on October 14, 2019, but St. Clare's later moved it to November 11, 2019.

k.   On October 23, 2019, St. Clare's medically cleared McKay for hire, in advance of the November 11, 2019 start date.

l.   On November 3, McKay began experiencing intense migraines and sensitivity to light, along with increased nausea and vomiting.  As a result, McKay was confined to her bed in a darkened room.  McKay was unable to go about her day, and was substantially limited in seeing, concentrating and thinking.

m.  McKay was an individual with a disability, as defined in 42 U.S.C. § 12102.

n.  Later that day, McKay was hospitalized and subsequently diagnosed with
preeclampsia, a pregnancy complication affecting the circulatory system,
characterized by high blood pressure, with risk of damage to other organ
systems, such as the liver and kidneys, and risk to the fetus.

o.  One of the most effective treatments for preeclampsia is delivery of the patient's
baby.  McKay was therefore induced into early labor.

p.  On November 6 after the induction began, McKay emailed Respondent's HR
Generalist, Michelle Flynn, from her hospital bed, saying:

> I am reaching out because I have been diagnosed with preeclampsia
> and I was induced and am awaiting the arrival of my baby. So therefore
> I will not be able to attend orientation next week, and I am reaching out
> to see what steps I need to take next. Please let me know.

q.  Flynn understood McKay's email to be a request to delay her start date because
of her preeclampsia.

r.  Flynn forwarded this email to McKay's future manager, Vito Ciccetti, with the
message "[w]e need to talk."

s.  Only a few hours after receiving McKay's email, Flynn left a voicemail for
McKay saying, "because you are technically not an employee, I can't hold the
position for you.  You can certainly apply when you're all settled and you do
want to re-enter the workforce, but at this point, I can't hold that position for
you."

t.  McKay gave birth to her baby that same day, approximately one month
premature.

u. McKay's preeclampsia did not immediately abate after the birth of her son. She continued to have severely high blood pressure for several days, requiring intravenous magnesium and other medications.

v. McKay was discharged from the hospital on November 10. She was prescribed a blood pressure medication, told to take her blood pressure twice per day, to take it easy and not to work until she could be cleared at her follow-up appointment approximately five weeks later, on or about December 17th.

w. McKay continued to suffer migraines for several days after her discharge.

x. After being released from the hospital, McKay called Flynn on November 15, 2019. During this call, Flynn repeated what she had said in her earlier voicemail—that she could not hold the Per Diem EMS Dispatcher position for McKay.

y. After this call, Flynn wrote to Ciccetti, saying, "I told her that [she] would have to reapply when she is cleared to work and would have to interview, etc."

z. McKay was ultimately cleared to start work during her appointment on or about December 17th, approximately five weeks after her discharge from the hospital. Thereafter, McKay was able to perform all essential functions of the Per Diem EMS Dispatcher job.

aa. After the offer for the Per Diem EMS Dispatcher role to McKay was withdrawn, St. Clare's did not hire someone to fill that position until February 10, 2020.

bb. St. Clare's withdrew McKay's offer of employment because she had preeclampsia which required hospitalization.

cc. This adverse employment decision resulted in harm to McKay.

6

14.     St. Clare's has engaged in unlawful employment practices in violation of Section 102(a) and (b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(B), by failing to engage in a good faith interactive process to identify accommodations and failing to provide McKay with a reasonable accommodation as a result of her disability.

     a.  The EEOC incorporates all subparagraphs of paragraph 13 as if fully set forth herein.

     b.  McKay's email to Flynn on November 6, 2019 made St. Clare's aware of plaintiff's disability, and plaintiff's request for an accommodation for, or assistance with, her disability.

     c.  St. Clare's did not send any communications to McKay regarding her medical diagnosis, her restrictions, or possible accommodations.

     d.  Only hours after receiving McKay's request, St. Clare's rejected McKay's request for a reasonable accommodation, and withdrew her offer of employment.

     e.  St. Clare's failed to engage in the interactive process in good faith, after being put on notice of McKay's disability and need of assistance for that disability.

     f.  St. Clare's failed to provide McKay with a reasonable accommodation of delaying her start date by approximately five weeks, which would have allowed her to complete the essential functions of the Per Diem EMS Dispatcher position.

15.     McKay suffered damages as a result of St. Clare's actions as described in paragraphs 13 and 14 above.

16.     The unlawful employment practices complained of in paragraphs 13 and 14 above were intentional.

17.     The unlawful employment practices complained of in paragraphs 13 and 14 above were done with malice or with reckless indifference to McKay's federally protected rights.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination, and from engaging in any employment practice that discriminates on the basis of disability.

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make McKay whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.     Order Defendant to make McKay whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.     Order Defendant to make McKay whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial.

F.      Order Defendant to pay McKay punitive damages for the malicious and/or

reckless conduct described above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper to the public

interest.

H.      Award the Commission its costs of this action.

<u>JURY TRIAL DEMANDED</u>

The Commission requests a jury trial on all questions of fact raised by its Complaint.


Dated: February 8, 2020

Respectfully submitted,

SHARON FAST GUSTAFSON
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney

KIMBERLY A. CRUZ
Supervisory Trial Attorney
Florida Bar No. 153729
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(929) 506-5345
kimberly.cruz@eeoc.gov

/s/ Caitlin Brown
CAITLIN D. BROWN
Trial Attorney

New York Bar No. 5219506
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
(929) 506-5277
caitlin.brown@eeoc.gov